FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEC -9 2015

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CR. NO. 2:14cr426-RWG |
| v. | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 152(1) |
| | ) | 18 U.S.C. § 152(3) |
| KENNON W. WHALEY | ) | 31 U.S.C. § 5324(a) |
| | ) | |
| | ) | **SECOND SUPERSEDING INDICTMENT** |

The grand jury charges:

## INTRODUCTION

At all times relevant to this indictment:

1. KENNON W. WHALEY ("WHALEY") resided in Auburn, Alabama, within the Middle District of Alabama.

2. WHALEY was the president and chairman of the board of directors of Southeastern Stud & Components, Inc. ("Southeastern Stud" or "the business"), an Alabama corporation, with its principal place of business at 4542 Baldwin Avenue, Montgomery, Alabama. Southeastern Stud was formed in 1999 and operated primarily as a manufacturer of light gauge steel framing components that it sold to customers throughout the United States.

3. WHALEY also owned a business entity known as K2 Enterprises, LLC ("K2 Enterprises" or "K2"). According to corporate filings, K2 Enterprises was formed in 2004 and purported to be formed as a business to own, operate, and sell equipment and supplies in connection with the steel fabrication industry. K2 Enterprise's principal place of business was at 4542 Baldwin Avenue, Montgomery, Alabama.

## SOUTHEASTERN STUD CHAPTER 11 BANKRUPTCY

4. On or about March 23, 2009, Southeastern Stud filed a Voluntary Petition ("Petition") for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Middle District of Alabama, Case No. 09-30765. The Petition was signed by WHALEY in his capacity as Chairman of the company.

5. After the Petition was filed, Southeastern Stud remained in business and WHALEY continued to manage the business's day-to-day operations as a debtor in possession ("DIP") until the bankruptcy case was closed on October 20, 2011.

6. As a debtor in possession, WHALEY, on behalf of Southeastern Stud, had an ongoing obligation to disclose all of the business's assets to the Bankruptcy Court. The assets to be disclosed included any receivables due to Southeastern Stud and any payments actually made from customers for orders of steel from the business.

7. As a debtor in possession, WHALEY was required to open and maintain a debtor in possession bank account ("DIP account") and conduct all of Southeastern Stud's financial transactions through the DIP account.

8. In or about March of 2009, WHALEY opened a commercial checking account, account number xxx-xxx-089-5, at Sterling Bank in Montgomery, Alabama, which served as the operating DIP account for Southeastern Stud until the bankruptcy case was closed.

9. While the bankruptcy case was pending, WHALEY was required to file each month a Monthly Operating Report ("the Monthly Report") with the Bankruptcy Court, disclosing certain financial information regarding the operations of Southeastern Stud. Specifically, WHALEY was required to disclose in the Monthly Report whether he had deposited all receipts for the business into the DIP account, whether he had any bank accounts open other than the DIP account, and whether he had transferred any assets to any business related to Southeastern Stud

in any way. Prior to filing, WHALEY was required to sign each Monthly Report, which contained the following declaration:

> IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.

### **WHALEY'S BANKRUPTCY FRAUD**

10. Between in or about March of 2009 and continuing through at least November of 2010, WHALEY fraudulently concealed assets of Southeastern Stud from the Bankruptcy Court and fraudulently made false declarations, certifications and statements to the Bankruptcy Court as follows:

#### **The K2 Invoice Scheme**

11. On or about August 28, 2009, a business customer of Southeastern Stud, identified herein as PS, Inc., ordered various steel components from Southeastern Stud. That same day, Southeastern Stud generated and submitted to PS, Inc. five invoices requesting a total payment of $34,689.60 for the steel components. Each invoice was printed on Southeastern Stud letterhead, which listed the business's phone number as "(xxx) 4SESTUD" and the address as 4542 Baldwin Avenue, Montgomery, Alabama 36108.

12. On or about August 31, 2009, Southeastern Stud delivered the steel components to PS, Inc. and included in the shipment several "Packing Lists," which documented certain details regarding the shipment such as the quantity and dimensions of the materials contained in the shipment. Each Packing List was printed on Southeastern Stud's letterhead, which listed the business's phone number, fax number and the address as 4542 Baldwin Avenue, Montgomery, Alabama 36108.

13. The invoices submitted to PS, Inc. by Southeastern Stud constituted a receivable of the business and any payment made on the invoices by PS, Inc. was an asset of the business that WHALEY, on behalf of Southeastern Stud, was required to disclose to the Bankruptcy Court.

14. On September 1, 2009, WHALEY contacted the management of PS, Inc. telephonically and via e-mail and requested that PS, Inc. delete the invoices submitted from Southeastern Stud and instead make payment for the shipment of steel components to K2 Enterprises. In exchange for PS, Inc. sending a check overnight to K2, WHALEY agreed to provide PS, Inc. with a 5% discount of the invoiced amount of $34,689.60.

15. On or about September 1, 2009, WHALEY submitted five fraudulent invoices to PS, Inc., which falsely purported to be from K2 Enterprises and created on K2 letterhead. The K2 invoices listed the business's phone number as "(xxx) 4SESTUD" and the address as 4542 Baldwin Avenue, Montgomery, Alabama 36108.

16. On or about September 1, 2009, PS, Inc. sent a check as payment for the August 31, 2009 shipment of steel components to K2 Enterprises as requested by WHALEY. The total amount of the payment was $32,955.46, which reflected the 5% discount promised to PS, Inc. by WHALEY.

17. On or about September 3, 2009, WHALEY deposited the $32,955.46 check from PS, Inc. into a commercial checking account, account number xxxxx642, in the name of K2 Enterprises at Community Bank & Trust ("CB&T") in Union Springs, Alabama.

18. Prior to the deposit of the PS, Inc. check, WHALEY had made wire transfers to multiple casinos, including a wire transfer in the amount of $47,000 to WHALEY's account at the Bellagio Casino Hotel in Las Vegas, Nevada.

19. WHALEY never disclosed to the Bankruptcy Court that he converted the Southeastern Stud invoices into K2 Enterprises invoices and induced PS, Inc. to make payment to K2 for the August 31, 2009 shipment of steel components from Southeastern Stud.

**The Insurance Proceeds Scheme**

20. On or about March 12, 2010, WHALEY opened commercial checking account, account number xxxxx8064, in the name of Southeastern Stud & Components, Inc. at River Bank & Trust in Prattville, Alabama ("the River Bank account"), and designated himself as the sole authorized signer on the account. This account remained open until November 30, 2010, but was never disclosed to the Bankruptcy Court, nor was it ever reported on any of the Monthly Operating Reports.

21. On or about March 15, 2010, WHALEY deposited into the River Bank account a check for insurance proceeds from CNA Continental Casualty Company made payable to "Southeastern Stud and Components" in the amount of $75,202.23. The face of the check stated that it was "In Payment of UNDISPUTED BUSN INCOME LOSS." Despite this deposit, WHALEY reported on the Monthly Operating Report for March of 2010 that he had deposited all receipts for Southeastern Stud & Components into the DIP account.

22. On or about May 21, 2010, WHALEY deposited into the River Bank account a check for insurance proceeds from CNA Continental Casualty Company made payable to "Southeastern Stud and Components" in the amount of $196,611.61. The face of the check stated that it was "In Payment of BALANCE DUE FOR BINT." Despite this deposit, WHALEY reported on the Monthly Operating Report for May of 2010 that he had deposited all receipts for Southeastern Stud & Components into the DIP account.

23. The insurance proceeds checks from CNA Continental Casualty Company were assets of Southeastern Stud that WHALEY, on behalf of Southeastern Stud, was required to disclose to the Bankruptcy Court and deposit into the DIP account.

24. WHALEY never disclosed the insurance proceeds to the Bankruptcy Court or deposited those proceeds into the DIP account. After depositing the insurance proceeds into the River Bank account, WHALEY kept the account open until in or about November of 2010. During that time WHALEY negotiated over $45,000 in funds from this account at Wynn Las Vegas Casino in Las Vegas, Nevada.

## COUNTS 1-3
### (Concealment of Bankruptcy Assets)

The allegations set forth in paragraphs 1 through 24 of this Indictment are hereby realleged as if set forth herein.

25. On or about the dates set forth below in Montgomery County, Alabama, and elsewhere within the Middle District of Alabama, the defendant,

**KENNON W. WHALEY**

did knowingly and fraudulently conceal from the creditors and others in connection with the case of In re Southeastern Stud & Components, Inc., Case No. 09-30765, a case under Chapter 11 of Title 11, United States Code, the Bankruptcy Code, property belonging to the estate of a debtor as follows:

| COUNT | DATES | DESCRIPTION OF PROPERTY |
|---|---|---|
| 1 | September 1, 2009 | Payment of $32,955.46 from PS, Inc. to K2 Enterprises for steel components purchased from Southeastern Stud. |
| 2 | March 15, 2010 | Proceeds from insurance check made payable to "Southeastern Stud and Components" in the amount of $75,202.23 |
| 3 | July 28, 2010 | Proceeds from insurance check made payable to "Southeastern Stud and Components" in the amount of $196,611.61. |

In violation of Title 18, United States Code, Section 152(1).

## COUNTS 4-9
### (False Bankruptcy Declaration)

The allegations set forth in paragraphs 1 through 25 of this Indictment are hereby realleged as if set forth herein.

26. On or about the dates set forth below in Montgomery County, Alabama, and elsewhere within the Middle District of Alabama, the defendant,

**KENNON W. WHALEY**

did, while aiding and abetting others, in and in relation to a bankruptcy case under Title 11 of the United States Code, that is In re Southeastern Stud & Components, Inc., Case No. 09-30765, in the United States Bankruptcy Court for the Middle District of Alabama, knowingly and fraudulently make false declarations, certifications and statements, within the meaning of Title 28, United States Code, Section 1746, as follows:

| COUNT | DATE | DESCRIPTION OF FALSEHOOD |
|---|---|---|
| 4 | January 11, 2010 | Stated on Monthly Operating Reports covering August and September of 2009 that he had not transferred any assets to any business related to Southeastern Stud in any way. |
| 5 | January 11, 2010 | Stated on Monthly Operating Reports covering August and September of 2009 that he had deposited all receipts for his business into the DIP Account. |
| 6 | April 30, 2010 | Stated on Monthly Operating Report covering March of 2010 that he did not have any bank accounts open other than the DIP Account. |
| 7 | April 30, 2010 | Stated on Monthly Operating Report covering March of 2010 that he had deposited all receipts for his business into the DIP account. |
| 8 | July 28, 2010 | Stated on Monthly Operating Report covering May of 2010 that he did not have any bank accounts open other than the DIP Account. |
| 9 | July 28, 2010 | Stated on Monthly Operating Report covering May of 2010 that he had deposited all receipts for his business into the DIP account. |

In violation of Title 18, United States Code, Sections 152(3) and 2.

## COUNT 10
### (Structuring)

The allegations set forth in paragraphs 1 through 26 of this Indictment are hereby realleged as if set forth herein.

27. On or about the dates set forth below, within the Middle District of Alabama and elsewhere, defendant,

### KENNON W. WHALEY

did knowingly structure the following currency transactions knowing of the domestic financial institution's legal obligation to report transactions in excess of $10,000, for the purpose of evading that reporting obligation:

| DATE | DESCRIPTION OF TRANSACTION |
| --- | --- |
| March 25, 2010 | A check drawn on the River Bank account in the amount of $8,000 and made payable to WHALEY. |
| March 29, 2010 | A check drawn on the River Bank account in the amount of $8,000 and made payable to WHALEY. |
| August 24, 2010 | A check drawn on the River Bank account in the amount of $9,000 and made payable to "CASH." |
| September 21, 2010 | A check drawn on the River Bank account in the amount of $9,000 and made payable to WHALEY. |

These transactions furthered Whaley's commission of the Concealment of Bankruptcy Assets charged in Counts 2-3 and the False Bankruptcy Declarations alleged in Counts 6-9 of the Indictment, and these transactions were part of a pattern of illegal activity involving more than $100,000 in a 12-month period. All in violation of Title 31, United States Code, Section 5324.

### FORFEITURE ALLEGATION-1

A.  The allegations contained in Counts 1 through 9 of this Second Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging

forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

B.   Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of concealment of assets or of making a false declaration in connection or in relation to a bankruptcy case, in violation of Title 18, United States Code, Section 152, the defendant, KENNON W. WHALEY, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violations. The property to be forfeited includes, but is not limited to, the following:

### Money Judgment

A sum of money equal to approximately $338,769.30 in United States currency, representing the approximate amount of proceeds the defendant obtained as a result of the said offense.

C.   If any of the property described above, as a result of any act or omission of the defendant:

   (1)   cannot be located upon the exercise of due diligence;
   (2)   has been transferred or sold to, or deposited with, a third party;
   (3)   has been placed beyond the jurisdiction of the court;
   (4)   has been substantially diminished in value; or
   (5)   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c) .

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

## FORFEITURE ALLEGATION-2

A.  The allegations contained in Count 10 of this Second Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 31, United States Code, Section 5317(c)(1).

B.  Pursuant to Title 31, United States Code, Section 5317(c)(1), upon conviction of structuring, in violation of Title 31, United States Code, Section 5324, the defendant, KENNON W. WHALEY, shall forfeit to the United States of America any property, real or personal, used or intended to be used in any manner or part to commit and to facilitate the commission of the offense.

C.  If any of the property described above, as a result of any act or omission of the defendant:

    (1)  cannot be located upon the exercise of due diligence;

    (2)  has been transferred or sold to, or deposited with, a third party;

    (3)  has been placed beyond the jurisdiction of the court;

    (4)  has been substantially diminished in value; or

    (5)  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c) .

All pursuant to Title 31, United States Code, Section 5317(c)(1).

A TRUE BILL:

_____
Foreperson

GEORGE L. BECK, JR.
UNITED STATES ATTORNEY

_____
Brandon K. Essig
Assistant United States Attorney